## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

v.

STEVEN VERNON CALDWELL,

Defendant.

Crim. Action No. TDC-18-0319
Civil Action No. TDC-21-0215

### MEMORANDUM OPINION

Defendant Steven Vernon Caldwell has filed a Motion to Vacate, Set Aside, or Correct the Sentence pursuant to 28 U.S.C. § 2255 ("the § 2255 Motion") in which he argues that his conviction and sentence must be vacated because he was subject to illegal searches and seizures, his trial counsel rendered ineffective assistance of counsel, and the Court erred by failing to consider the facts alleged in his motions to suppress. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* Rule 8(a), Rules Governing Section 2255 Proceedings for the United States District Courts; D. Md. Local R. 105.6. For the reasons set forth below, the § 2255 Motion will be DENIED and DISMISSED.

### BACKGROUND

On June 11, 2018, a federal grand jury returned a one-count Indictment against Caldwell for possession with intent to distribute controlled substances, in violation of 21 U.S.C. 841(a)(1). On April 4, 2019, Caldwell's trial counsel filed nine motions to suppress evidence and statements obtained through warrantless searches and seizures conducted on May 11, 2017, December 21, 2017, and January 16, 2018, and evidence obtained pursuant to search warrants from two residences in Montgomery County, Maryland. On May 23, 2019, before the Government had filed any briefs in opposition to the suppression motions, Caldwell pleaded guilty to the charge in the

Indictment pursuant to a plea agreement.  In the plea agreement, which was governed by Federal Rule of Criminal Procedure 11(c)(1)(C), the parties agreed that the total offense level under the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") was 31 and the criminal history category was VI, based on the applicability of the career offender enhancement under U.S.S.G. § 4B1.1, and that the parties would both recommend a sentence between 96 and 156 months of imprisonment.  On October 1, 2019, the Court (Grimm, J.) agreed with the parties' calculation of the total offense level and criminal history category, found that the applicable Guidelines range was 188 to 235 months of imprisonment, and granted a downward variance to sentence Caldwell to a total term of imprisonment of 120 months, which fell within the parties' requested Rule 11(c)(1)(C) plea range.  Caldwell, who had waived his right to appeal in the plea agreement, did not file a direct appeal.

On February 3, 2021, Caldwell filed a "Request for Enlargement of Time" in which he asked for an extension of the deadline to file a § 2255 motion on the grounds that the lack of access to a law library and other restrictions during the COVID-19 pandemic had rendered him unable to "put forth due diligence in preparation of § 2255 appeals."  Mot. Enlargement of Time at 1, ECF No. 50.  The Court construed the filing as a § 2255 motion and granted Caldwell an additional 90 days to file a supplement to the § 2255 Motion identifying his grounds for relief.  *Holland v. Florida*, 560 U.S. 631, 645 (2010) (holding that the limitations period may be equitably tolled); *Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014) (applying the *Holland* equitable tolling standard to a § 2255 motion).  Caldwell filed the supplement on May 4, 2021.

## DISCUSSION

In his § 2255 Motion, Caldwell challenges his conviction and sentence on the grounds that: (1) he was subject to illegal searches and seizures; (2) his trial counsel rendered ineffective

assistance of counsel by failing to argue the suppression motions or the facts underlying the motions, and by failing to appeal the denial of the motions; and (3) the Court erred by failing to consider the facts alleged in the suppression motions. The Government argues that Caldwell's first and third grounds for relief are procedurally defaulted and that Caldwell has not established a claim of ineffective assistance of counsel.

## I.     Legal Standard

A prisoner in federal custody may move to vacate, set aside, or correct the sentence on the basis that: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) the sentencing court lacked jurisdiction; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a) (2018). The prisoner bears the burden of proof and must establish the claim by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

In § 2255 proceedings, a hearing is necessary where there are material disputed facts or where the court must make a credibility determination in order to resolve the motion. *See United States v. Witherspoon*, 231 F.3d 923, 926-27 (4th Cir. 2000). However, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts.

## II.     Procedural Default

The Government argues that Caldwell's first and third grounds for relief are barred by the doctrine of procedural default because he did not assert them on direct appeal. Generally, the doctrine of procedural default bars a federal defendant from asserting a challenge to his or her conviction on collateral review when that challenge was not first asserted on direct appeal.

3

*See Massaro v. United States*, 538 U.S. 500, 504 (2003); *United States v. Draven*, 77 F.4th 307, 315 (4th Cir. 2023). However, procedural default may be excused when a defendant demonstrates either "cause" and "prejudice," or that the defendant is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 622-23 (1998) (quoting *Murray v. Carrier*, 477 U.S. 478, 485 (1986)). "Cause" requires a defendant to show that there was "some external impediment preventing [his] counsel from constructing or raising the claim." *Draven*, 77 F.4th at 315. To demonstrate prejudice, a defendant must demonstrate "not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). " "'[A]ctual innocence' means factual innocence, not mere legal insufficiency," and requires a showing that "it is more likely than not that no reasonable juror would have convicted" the defendant. *Bousley,* 523 U.S. at 623.

Here, Caldwell's first and third arguments are subject to procedural default because he failed to raise these arguments on direct appeal. The fact that Caldwell waived his right to appeal in the plea agreement does not constitute cause for purposes of procedural default. *See United States v. Pipitone*, 67 F.3d 34, 38-39 (2d Cir. 1995); (finding that language in a plea agreement barring an appeal is not sufficient cause for purposes of excusing procedural default); *United States v. Jones*, No. 94-6209, 1995 WL 321263, at *1 (4th Cir. May 30, 1995). Caldwell has identified no other reason that these claims could not have been asserted. Even if Caldwell could establish cause, he has not provided any basis to find prejudice. The claim that there was an illegal search does not demonstrate prejudice because "when a defendant is convicted pursuant to his guilty plea rather than a trial, the validity of that conviction cannot be affected by an alleged Fourth Amendment violation because the conviction does not rest in any way on evidence that may have

4

been improperly seized." *Haring* v. *Prosie*, 462 U.S. 306, 321 (1983). The claim of "judicial misconduct" based on the failure to consider facts referenced in the motion to dismiss similarly could have no impact on the conviction, and Caldwell has made no showing that this claim would impact the sentence, when the Court imposed a sentence that was a substantial downward variance from the Guidelines range and was toward the lower end of the parties agreed-upon range under Rule 11(c)(1)(C). Finally, Caldwell has neither claimed actual innocence nor provided any basis to support such a claim. Where Caldwell's first and third claims have been procedurally defaulted, the Court will dismiss the § 2255 Motion as to those claims.

## III.   Ineffective Assistance of Counsel

Caldwell's remaining argument is that his trial counsel rendered ineffective assistance of counsel by failing to argue the suppression motions and their underlying facts or to appeal the denial of those motions. The Government acknowledges that ineffective assistance of counsel claims are not subject to procedural default, *see Massaro*, 538 U.S. at 509, but argues that Caldwell's counsel performance was not constitutionally deficient.

The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court held that to prevail on a claim of ineffective assistance of counsel, a petitioner must establish two prongs: deficient performance and prejudice. *Id.* at 692. This two-part test applies to challenges to guilty pleas. *See Hill v. Lockhart,* 474 U.S. 52, 58 (1985).

First, the petitioner must show that counsel's performance was deficient in that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Deficiency exists when "counsel's

5

representation fell below an objective standard of reasonableness" under "prevailing professional norms." *Id.* at 688; *see Wiggins v. Smith*, 539 U.S. 510, 521 (2003). "Judicial scrutiny of counsel's performance must be highly deferential" and apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

Second, a petitioner must show prejudice in that the deficient performance by counsel consisted of errors that "were so serious as to deprive the defendant of a fair trial" whose result was reliable. *Id.* at 687. To establish prejudice in a case in which the defendant pleaded guilty, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Caldwell alleges that he received ineffective assistance of counsel because his trial counsel neither argued nor appealed the nine motions to suppress. However, the motions were never briefed by the Government, no hearing was held on them, and the Court did not rule on the motions because Caldwell pleaded guilty before those steps could occur, so there is no basis to argue that trial counsel should have argued the motions or appealed them. To the extent that Caldwell argues that his trial counsel should have fully litigated those motions before recommending that he plead guilty, Caldwell has not provided a sufficient basis to conclude that the failure to take this approach constituted deficient performance. A review of the motions as filed by trial counsel does not provide a basis to conclude that they were facially meritorious, and Caldwell has offered no legal or factual analysis that would provide a basis to conclude that one or more of the motions was sufficiently likely to succeed that the failure to pursue it to conclusion was deficient performance.

6

Moreover, he has provided no legal or factual analysis that would provide a basis to conclude that the granting of any particular motion would have actually undermined the prosecution to the point that it was deficient performance to fail to require a ruling on the motion.

Significantly, the record reflects that the Rule 11(c)(1)(C) plea agreement negotiated by Caldwell's counsel effectively guaranteed that he would receive a downward variance to a sentence below the Guidelines range, from the Guidelines range of 188 to 235 months to a range of 96 to 156 months, and that he actually received a sentence of 120 months. Thus, the record demonstrates that the recommendation that the defendant plead guilty rather than pursue the motions to suppress to their conclusion resulted in a material benefit to Caldwell at sentencing. Under these circumstances, Caldwell needed to show how the motions were so likely to be meritorious, and so likely to adversely impact the Government's case, that recommending acceptance of the generous plea agreement terms before the Court heard argument on or ruled on the motions was deficient performance. He has not done so.

Second, Caldwell has not demonstrated that the failure to pursue the motions to suppress to a ruling resulted in prejudice in that but for his trial counsel's failure to do so, "there is a reasonable probability that . . . he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. He has provided no showing that anything that his trial counsel did or failed to do made it reasonably probable that he would have rejected the plea agreement. If anything, the record provides significant evidence that he would have pleaded guilty regardless. First, he pleaded guilty with full knowledge that he would not receive a ruling on the suppression motions or on an appeal. The plea agreement, which Caldwell signed, stated that by pleading guilty, Caldwell "will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind." Plea Agreement ¶ 4(g), ECF No. 35.

The plea agreement also stated that if Caldwell elected to go to trial, he would have "the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of the evidence, but that by pleading guilty, he "knowingly gives up the right to appeal the verdict and the Court's decisions." *Id.* ¶ 4(e). In the plea colloquy, Caldwell answered affirmatively to the Court's questions whether he had "carefully read the plea letter and the Statement of Facts before [he] signed them"; whether he "was satisfied . . . that he understood what they said before [he] signed them"; and whether he had "the opportunity to discuss with [his attorney] any legal aspects of the plea agreement before [he] signed." 5/23/19 Hrg. Tr. at 3, ECF No. 72; *see United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (stating that because courts "must be able to rely on [a] defendant's statements made under oath" during a plea colloquy, statements during these proceedings carry a "strong presumption of verity"). The Court expressly told Caldwell that if he pleaded guilty, he would "give up his right to object to evidence because the only evidence [in a plea agreement] is the Statement of Facts," and that he would be giving up his right to appeal if the Court imposed a sentence within the agreed-upon range, and Caldwell confirmed that he understood both points. 5/23/19 Hrg. Tr. at 16, 22-23. Notably, this is not a case in which the defendant is claiming that he was unaware of the possibility that his trial counsel could have filed a particular suppression motion that would have been meritorious. *Cf. Hill*, 474 U.S. at 58-59 (noting that in "many guilty plea cases," the claim is that the trial counsel failed to investigate and discover favorable evidence or to advise of a potential affirmative defense). Rather, Caldwell was aware that motions to suppress had already been filed, that they had not yet proceeded to a ruling, and that they would not be the subject of an appeal if he pleaded guilty, yet he still chose to enter a guilty plea.

Second, as discussed above, Caldwell has provided no basis to conclude that there was a reasonable probability that any of his suppression motions, if fully litigated, would have been granted, or that the granting of such motions would have impacted the prosecution's case to the point that he would not have pleaded guilty. Third, he has not shown how there was such a reasonable probability that his trial counsel would have refrained from recommending that he accept the plea agreement and its favorable terms relating to sentencing, which effectively guaranteed a downward variance at sentencing and, in fact, led to a sentence that was 68 months, or over five years, lower than the applicable Guidelines range. The Court therefore finds that Caldwell has not demonstrated that his trial counsel's failure to pursue the suppression motions to resolution or on an appeal constituted deficient performance or constituted prejudice.

Finally, to the extent that Caldwell argues that beyond these issues, there was ineffective assistance of counsel because his trial counsel failed to reference facts underlying the suppression motion in argument before the Court, he has not identified any specific argument or factual reference that was not made but had to be made to avoid deficient performance. Particularly where the Court's sentence of 120 months was well below the Guidelines range and closer to the low-end of the agreed-upon range, Caldwell has also failed to show how the failure to reference any particular fact resulted in prejudice.

For these reasons, the Court will deny the § 2255 Motion as to the claim of ineffective assistance of counsel.

## IV.   Certificate of Appealability

A prisoner has no absolute entitlement to appeal a district court's denial of a § 2255 motion. *See* 28 U.S.C. § 2253(c)(1)(B). To appeal this Court's denial of his § 2255 Motion, Caldwell must first obtain a certificate of appealability. *Id.* A certificate of appealability may issue "only if the

9

applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). When a district court reaches the merits of a claim in a § 2255 motion, a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court dismisses a § 2255 motion on procedural grounds without reaching the merits of the constitutional claim, a petitioner must demonstrate that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling." *Id.* Upon consideration, the Court finds that Caldwell has not met either standard and thus will not issue a certificate of appealability. Caldwell may still seek a certificate of appealability from the United States Court of Appeals for the Fourth Circuit. *See* Fed. R. App. P. 22(b)(1).

## CONCLUSION

For the foregoing reasons, Caldwell's § 2255 Motion will be DENIED as the ineffective assistance of counsel claim and DISMISSED as to all other claims based on procedural default. The Court will decline to issue a certificate of appealability. A separate Order shall issue.

Date:  December 19, 2023

THEODORE D. CHUANG
United States District Judge